This is the case of Ben Ray the Marriage of Pamela Masching versus Patrick Masching. We have Mr. Curtis Blood for the appellant and we have Mr. Rick Steiger for the appellate. You may proceed Mr. Blood. Good morning. May this please the court. How so? My client is Patrick Masching and he has signed a judgment of dissolution of marriage without legal counsel. The judgment provides for Patrick to pay his ex-wife 2.55 million dollars in maintenance over a period of 30 years that ends in 2028 when parties will be 72 years old. The circuit court filed my client's petition to terminate maintenance on the grounds that his ex-wife and mother of his children was cohabiting with another man. In her motion to dismiss my client's petition she didn't even deny cohabitation. Actually it wasn't even an answer it was a motion to dismiss it. She responded that my client agreed to pay maintenance no matter what happened. The circuit court dismissed my client's petition to terminate maintenance which brings us here and we ask this court to revert. I've quoted or defined five times in my brief passage about termination. It's that provision says that maintenance cannot be extended nor can it be terminated. It cannot be increased or decreased. That's what the agreed judgment says. It doesn't mention cohabitation or remarriage. The statute section 510 says cohabitation or remarriage and maintenance must agree by the parties in a written agreement. Patrick is not an attorney and as I said he was not represented. Patrick is a medical doctor. Actually he's an emergency room doctor. He's not a lawyer for sure. That's for sure. Or even a businessman. He's a lousy businessman and certainly no lawyer. Tell me what this maintenance section means in paragraph 5. It cannot be terminated prior to completion of the payments. How is that not in compliance with 501? Well the distinction that we're asking this court to accept is that the statute says that maintenance terminates unless there's a written agreement. Maintenance terminates in the event of cohabitation unless there's a written agreement. Or the judgment approved by the court says so and this is a judgment approved by the court. But of course it's contract rules. Mr. Blood, you said he's not an attorney. Does that have anything to do with the way we view this contract, this judgment? Your Honor, are you asking if there's a different standard of interpretation? Right. If I could have cited your case, Your Honor, that there was a different standard of interpretation, I'd cite it. If I could have found 10, I'd cite it all. So I have to answer no. But what we are saying is that it doesn't actually, the judgment doesn't actually mention cohabitation. It doesn't specifically state that maintenance will occur in the event of cohabitation. Actually the courts have to indulge in eviction. They have to say, well, the courts have to admit whether it's said or not that the agreement, that the judgment doesn't mention cohabitation. It doesn't have to because the statute says unless otherwise agreed by the parties in a written agreement set forth in the judgment or otherwise approved by the court, blah, blah, blah, it terminates upon cohabitation. Unless otherwise agreed. What does that mean? Right. Right. But it doesn't say cohabitation. It doesn't have to. Well, so then, so then what the courts have to say, even if this court doesn't say it, has to think it, is if that's not what Patrick said, then that's what Patrick meant. Well, don't we have to look at what no matter what means? Well, it's not exactly the word, but cannot be. What are the words? Cannot be, cannot be extended, nor can it be terminated. Cannot be increased or decreased. I think I've got that. That's the extent of it. I think I've got that just right. It's five times in my brief. Okay. Once again, the emphasis of the circuit court. So what I'm saying is it's eviction. You've got to say, well, that's not what he said. Patrick didn't say he'd pay him to admit on cohabitation. So that must be what he meant. But he did say it cannot be decreased. Well, I'm saying he didn't even consider cohabitation. But he also knew he didn't consider that she might win the lottery and be $50 million richer. True. In which case she wouldn't really even need any money, but she might want to give it away to charity. True. I agree. I agree. However, there is no statute that says that in the event that the party receiving maintenance hits the lottery, maintenance shall cease. That's true. But that statute also says that you can waive that right by stating in your agreement that you are not fighting by the statute. And actually one of the cases that the circuit court cited says the agreement says we're not going to abide by the statute. It's a statute. But I guess the Schweitzer case. But there's no mention of the statute here. There's nothing to – it's not just a matter of construing an agreement. It's a matter of notice to Patrick. But we know he's not an attorney. He probably didn't know such a statute existed. Probably not. So he wouldn't mention it. But, again, we're holding him to the same standard here as an attorney. I have to, Your Honor. But I don't think that any of the cases that have been cited in these briefs requires the conclusion that he agreed to, that he agreed in the event of cohabitation to continue to pay when the agreement doesn't mention it. Again, what did he say? He didn't say that. What did he mean? Pretty darn sure he didn't mean that. Well, if he didn't say it and he didn't mean it, then how can it be an agreement to pay in the event of cohabitation? That's our argument in a nutshell. It doesn't say it. He didn't. Well, except that if he says it can never be terminated, there might be a statute out there that says if you win the lottery, then it's terminated and you don't need the money. But he doesn't know any of that. So he makes the blanket statement, not knowing what his rights are or the law is, that it's never to be increased or just decreased. Yes. Essentially in any event. It could have said it in the event. Yes. It could have said no matter what. It could have said that. Our point is that if it says in the event of cohabitation and a judgment, then he knows, oh, I have to pay in the event of cohabitation. I have to pay her until she's 72. But we're presuming that he knows the law, so he's presuming to know that he doesn't have to pay in the event of cohabitation. I'm not comfortable with presuming that he knows the law. Well, I'm talking about legally we're presuming, not whether or not. We probably can presume he didn't know the law. I'm presuming he didn't know the law. But isn't there a legal presumption with the standard being the same that he knew what he was entering into? We know that he didn't have a lawyer. We know that the statute says that you've got to agree on it. Otherwise, permanent cohabitation terminates. The statute says it does terminate unless there's an agreement or written agreement. And we're saying, he didn't say that. He didn't mean that. Well, if he didn't say it and he didn't mean it, why are we here? Well, we're here because he's $2.5 million on the bad side of an unconstitutional judgment. I think the court very clearly understands our position. And although we would generously grant 15 minutes for argument, I don't think there's any need to beat it any further. Thank you, Mr. Flood. Mr. Stein. Justice Chapman, to please the court, this one is kind of round two. There was, as you'll see from reviewing the record, a motion to vacate heard by Judge Harrison that was denied. And then we came in on this one. Dr. Mashing is a medical doctor, emergency room physician, ten plus years of education post high school. As was expressed in the transcript, and the reason I bring up the prior proceeding, I'm not sure which transcript. He had a very low opinion of lawyers. This was fully negotiated by the doctor. The doctor was very active in the resolution of this. The language that we're dealing with is nor can it, the maintenance, nor can it be terminated prior to completion of the payments as set forth above for any reason. So I think we're not dealing with mystery language here. We're not dealing with legal intricacies. I think anyone of average intelligence can understand cannot be terminated for any reason. So I think the idea of premarital cohabitation, whatever, is fairly academic. Justice Waxman has, I think, has identified the issue. Under our statute, you have what I refer to, and sometimes get in trouble for it, as statutory maintenance, which is the maintenance that sets forth in the statute, terminates on this, can be modified, can be extended, can be reduced, and certainly would be terminated on cohabitation or remarriage unless the parties have otherwise agreed, right? In my experience, there are two ways cases get resolved. Either they're resolved by agreement or stipulation or they're resolved by a hearing on the merits and a decision by the court. There's no question that this one was not resolved in a hearing on the merits. This was a stipulated agreement to which the parties agreed. Dr. Matson had buyer's remorse. The maintenance does sound ridiculous, but if you do the math, it's over a long period of time from a payor who earns north of $400,000 a year. So it is a substantial amount, but that, again, is not what we're concerned with. Was he conscious? Was he, you know, an aware adult able to contract? Absolutely. Did he reach an agreement? Absolutely. Did the agreement provide that the maintenance would be for a set amount? It would not be terminated for any reason. Absolutely. And that is what Judge Stiles based his decision on. And I think the record really supports the decision. Thank you. Mr. Flood, do you have a rebuttal? I haven't even got a phone number yet. We're lost here. We'll take care of it. I claim he was tricked. I mean, is there any question that he was tricked? I mean, he was pleased. Tricked by who? By who? By his ex-wife. Was she an attorney? No, she was counsel. What does the phrase, for any reason, mean, if it doesn't mean? Never can it terminate. What does for any reason mean? It defines itself. I can't argue anything else. I mean, how can I stand here in all candor and change the world if it doesn't say what it says? In my brief, I've done it. So basically he was tricked because you're saying his wife's counsel knew that there was a statute out there that would have excluded cohabitation, but he didn't know that because he's not a lawyer. Right. Where does that get him if he fell to the same standard when he enters a contract as a lawyer? I've read these cases. I distinguish the ones that are cited to us. And I don't think that any of them requires you have to put them together to affirm them. I mean, there's no one that controls this case. I assume there's nothing in the record where during the trial court's approval of the judgment or entry that there was any reference to cohabitation. There's probably nothing, any, at worst, probably not in this record. At the time of the judgment? At any time. Nothing whatsoever. The only mention of cohabitation on the record is the verified petition by Patrick stating that she's cohabiting. Okay. But nothing prior to the entry of the judgment. That's correct. Who was the drafter of the order? I'm sorry. Not the order. Who was the drafter of the agreement? Mr. Starkey. So you're the trickster. Yes, ma'am. And I don't think that affirmance is absolutely required on these cases. I realize that we're on a roll, but I think that the circumstances, under those circumstances, trickery, policing is not justice. My client is venturing. I don't think it's unfair to say my client's been pleased. Do you think that Mr. Steiner had a duty to point out to your client who is not up with counsel to say, Mr. Steiner, are you aware that there's a statute that would have excluded cohabitation or would have caused termination? I think it's a very clever representation. That doesn't answer my question. No, but that is my thought. I mean, I want to be honest with you, and that is my thought. It's very clever. It's very neat to get him in there and get it done, and then lodge it off for 30 days until it's too late to appeal it, and then clamp down on his visitation. I think that is very sly. I mean, I don't think it was – no, I'm not saying that he did that. I'm not saying that his client did that. Obviously, she seemed to know the significance of 30 days. After 30 days was done, that's when she got sharp about business. We're saying – we're saying that these people are going to get away with this. These people are going to do this to Patrick. We're asking that this court make him go off the Springfield Court. Thank you. Thank you, Mr. Dwyer. Thank you, Mr. Spicer. We will take the matter under advisement.